UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JASON FLAKES,

                    Plaintiff,                          Case No. 1:16-cv-418

v.                                                      Honorable Robert J. Jonker

C. BROWN et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Discussion

I.    Factual allegations

Plaintiff Jason Flakes presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Bellamy Creek Correctional Facility (IBC).  He sues the following IBC officials:  Mail Room Officer C. Brown; Assistant Resident Unit Supervisor (ARUS) J. Buchin; Resident Unit Manager Rufus Wright; Supervisor Arleen Edwards; Warden Tony Trierweiler; and Grievance Coordinator Mitch Vroman.

Plaintiff alleges that his sister mailed him seven photographs of his female friend. On July 27, 2015, Defendant Brown sent Plaintiff a Notice of Mail Rejection, based on a determination that the photographs showed a woman's naked buttocks, in violation of MICH. DEP'T OF CORR., Policy Directive 05.03.118 ¶ MM(13).[1]  Plaintiff requested an administrative hearing.  On August 6, 2015, Plaintiff also filed a grievance (IBC 1508-2164-15A), demanding a timely hearing and an opportunity to personally review the photographs.  Defendant Buchin conducted a hearing on the mail rejection on August 7, 2015.  Buchin showed Plaintiff photocopies of the photographs, which were redacted with black marker across the buttocks area, so Plaintiff could not get a clear view of the content of the photographs.  Plaintiff complained about his inability to determine the content of the photos, but Defendant Buchin refused to allow Plaintiff to see the actual contraband,

---

[1]Paragraph MM of the mail policy lists a series of incoming mail items that are prohibited because they "may pose a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner."  Subsection 13 of that list bans the following items:

"Nude photographs, except if included in a publication sent directly from the publisher or an authorized vendor.  Nude photographs are defined as any photograph exposing the buttocks, pubic area or genitalia, or, except if a baby or infant, the female breast below the top of the areola.  This includes exposure through 'see through' materials."

MICH. DEP'T OF CORR., Policy Directive 05.03.118 ¶ MM(13).

indicating that to do so would violate policy and create a threat to the security of the institution and the staff.  But Buchin informed Plaintiff that he personally would view the original photographs before making his determination.  Defendant Buchin then adjourned the hearing.

Immediately after the hearing, Plaintiff wrote to Defendant Trierweiler, ostensibly on behalf of his sister.[2]  Plaintiff complained that the photographs were not pornographic, as, despite the redactions, it could plainly be seen that the woman was wearing either Daisy Duke short-shorts with a ruffle or a bathing suit.  The photographs did not reveal the woman's genitals.  Plaintiff received a response indicating that he was required to grieve the hearing results and follow the grievance process.

Defendant Buchin continued the hearing on August 10, 2016.  Plaintiff complains that the photographs still were not available to Plaintiff, but Buchin advised Plaintiff that he had seen the pictures and could not allow them because the woman had clearly exposed her buttocks.  Plaintiff stated that he had similar pictures already in his cell, and he complained that black women were being targeted because of their genetics, which cause them to have large thighs, hips and buttocks.  Plaintiff also indicated that a woman wearing a thong was not exposing her bare buttocks.  Defendant Buchin concluded that, although the woman was wearing a bathing suit, she nevertheless exposed her buttocks.  As a result, Buchin held, the pictures violated Policy Directive 05.03.118.  Plaintiff was given the opportunity to either pay to have the pictures mailed back to the sender or have the pictures destroyed.

---

[2]Under MICH. DEP'T OF CORR., Policy Directive 05.03.118 ¶ XX, a prisoner who disagrees with the outcome of a mail-rejection hearing may appeal the result by filing a grievance.  However, the policy also permits the sender to appeal a proposed mail rejection by sending a letter to the facility head within ten days of the Notice of Mail Rejection.  *See* MICH. DEP'T OF CORR., Policy Directive 05.03.118 ¶ YY.  By naming his sister as the person appealing, Plaintiff apparently attempted to exercise the avenue of appeal reserved for the sender of rejected mail.

Plaintiff filed a second grievance (IBC 1508-2203-07A) on August 10, 2015, arguing that Defendant Buchin violated his right to due process when he refused to allow Plaintiff to view the pictures at the hearing and when he determined that the pictures were barred by prison policy. Plaintiff also alleged that Defendant Buchin was racially biased against Plaintiff's "black female friend because she is big and the clothes she worn." (Attach. to Compl., ECF No. 1-1, PageID.39.)

On August 12, 2015, Plaintiff wrote to Defendant Brown, asking that Brown hold Plaintiff's photographs until Plaintiff exhausted his administrative remedies. Brown did not respond. As a result, on August 20, 2015, Plaintiff filed a third grievance (IBC 1508-2320-15A) against Brown for failing to respond to the kite.

On August 13, 2015, the Step-I grievance responder, ARUS Beak, denied Plaintiff's first grievance (IBC 1508-2164-15A), on the grounds that a grievance could not be filed before the administrative hearing process was complete. Beak concluded that, because the mail rejection was still pending, Plaintiff's grievance did not raise a valid issue. On August 20, 2015, Plaintiff appealed the grievance to Step II. He submitted his Step-III appeal on September 2, 2015. The Step-III grievance was denied on December 31, 2016.

Plaintiff was called to the control center on August 26, 2015 to meet with Defendant Edwards about Plaintiff's third grievance (IBC 1508-2320-15A). Plaintiff told Edwards that he had a constitutional right to have his pictures held by the institution until Plaintiff had completed the grievance process. Edwards told Plaintiff that, in accordance with the hearing decision, Plaintiff's pictures would be destroyed unless they were picked up or mailed back to the sender. Plaintiff alleges that Defendant Edwards' statement violated prison policy. Plaintiff received Defendant Edwards' Step-I grievance response on August 27, 2015. In her response, Edwards stated that

Plaintiff's photographs would be destroyed unless Plaintiff completed a disbursement form authorizing them to be returned to sender. Plaintiff filed a Step-II grievance appeal on September 2, 2015. Defendant Trierweiler responded to Plaintiff's Step-II appeal on September 9, 2015. Trierweiler concluded that the Step-I response was adequate and appropriate. Plaintiff filed his Step-III appeal on September 15, 2015. The Step-III grievance was denied on March 15, 2016.

On August 25, 2015, Defendant Robinson sent a memorandum to Plaintiff, threatening to place Plaintiff on modified grievance access[3] if he filed another grievance. Defendant Trierweiler placed Plaintiff on modified grievance access on August 26, 2015. Plaintiff complains that the grievance restriction was retaliatory and violated his First, Fifth, Eighth and Fourteenth Amendment rights. Plaintiff wrote to Defendant Trierweiler on September 3, 2015, complaining that his placement on modified grievance access was hindering his ability to exhaust his administrative remedies. Plaintiff claims that Defendants Robinson and Vroman also were placed on notice of Plaintiff's objections.

Defendant Wright conducted a Step-I review of Plaintiff's second grievance (IBC 1508-2203-07A) on September 10, 2015. Wright told Plaintiff that he had seen the rejected pictures, that he did not see anything indecent about them, and that, if he had reviewed the mail rejection, he would have allowed the pictures. Wright advised Plaintiff, however, that officials above Wright had already determined not to allow them into the facility. Wright also agreed with Plaintiff that bigger women who wore the same outfits as thinner women did not look the same and were therefore

---

[3]Under MICH. DEP'T OF CORR., Policy Directive 03.02.130 ¶ HH, "[a] prisoner or parolee who files an excessive number of grievances which are vague, duplicative, raise non-grievable issues, or contain prohibited language as set forth in Paragraph G, or is found guilty of misconduct for filing an unfounded grievance as set forth in Paragraph L, may have access to the grievance process limited by the Warden or FOA Area Manager for an initial period of not more than 90 calendar days." While the prisoner is on modified access, he "shall be able to obtain grievance forms only through the Step I Grievance Coordinator." *Id.* ¶ KK.

treated differently. Wright also explained that the laws of Ionia County were different from MDOC policy. Wright denied Plaintiff his pictures. Wright agreed to indicate on his grievance response that the pictures would be held while Plaintiff completed his appeals through Step III. Wright issued his response on September 14, 2015. Plaintiff alleges that he appealed the denial to Step II by writing Defendant Trierweiler and informing him that Plaintiff had a right to have his property held until he completed administrative reviews and that Defendant Trierweiler would violate Plaintiff's constitutional rights if he allowed the property to be destroyed. Defendants Vroman and Trierweiler allegedly gave a retaliatory response to the Step-II grievance. They concurred with Wright's Step-I grievance denial and quoted the dictionary definition of "buttocks" to support their finding that the photos showed an exposed buttocks. They also stated that the photos continued to be held and would be held until Plaintiff completed his Step-III review. But they indicated that, because the grievance concerned the same issues raised in Plaintiff's other grievances, his continuing efforts to pursue his grievance to Step III could result in a continuation of Plaintiff's placement on modified grievance access. Plaintiff appealed to Step III on October 15, 2015, indicating that he wanted the photos preserved for his anticipated federal-court action. The Step-III grievance was denied on March 22, 2016. Plaintiff complains that he was never given further notice about the status of his photographs and was never given another opportunity to mail them back.

Plaintiff alleges that Defendants have engaged in acts of racial discrimination, ethnic intimidation, racial profiling, humiliation, and denial of equal protection by rejecting non-nude photographs of Plaintiff's African-American female friend. He also alleges that the photographs were rejected in violation of prison policy and the First, Fifth, Eighth and Fourteenth Amendments.

Plaintiff seeks compensatory damages, together with declaratory and injunctive relief.

- 6 -

II.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify

the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Due Process

Plaintiff alleges that Defendants deprived him of his property without due process of

law, in violation of prison policy and the Fifth and Fourteenth Amendments.  Plaintiff does not

specify, but he appears to allege both procedural and substantive due process claims.

#### 1.    Procedural due process

"The Fourteenth Amendment protects an individual from deprivation of life, liberty

or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

To demonstrate a violation of procedural due process, a plaintiff must show the following elements:

(1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a

deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438

F.3d 595, 611 (6th Cir. 2006).  Analysis of a procedural due process claim involves two steps:

"[T]he first asks whether there exists a liberty or property interest which has been interfered with by

the State; the second examines whether the procedures attendant upon that deprivation were

constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

To the extent that Plaintiff alleges that Defendants violated prison policy when they

refused to allow the pictures, Plaintiff fails to state a claim.  A defendant's failure to comply with

an administrative rule or policy does not itself rise to the level of a constitutional violation.  *Laney*

*v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir.

2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d

232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

In addition, Plaintiff's claim that he was denied due process by the unauthorized taking of his property is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in other part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive

04.07.112, ¶ B (effective Dec. 12, 2013).  Aggrieved prisoners may also submit claims for property

loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; MDOC

Policy Directive 03.02.131 (effective Oct. 21, 2013).  Alternatively, Michigan law authorizes actions

in the Court of Claims asserting tort or contract claims "against the state and any of its departments,

commissions, boards, institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  The

Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for

deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a

state-court action would not afford him complete relief for the deprivation, either negligent or

intentional, of his personal property.

Further, it is clear that Plaintiff received due process of law.  In all cases where a

person stands to be deprived of his life, liberty or property, he is entitled to due process of law.  This

due process of law gives the person the opportunity to convince an unbiased decision maker that, for

example, he has been wrongly or falsely accused or that the evidence against him is false.  The Due

Process Clause does not guarantee that the procedure will produce a correct decision.  "It must be

remembered that even if a state decision does deprive an individual of life, [liberty], or property, and

even if that decision is erroneous, it does not necessarily follow that the decision violated that

individual's right to due process."  *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980).  "[T]he

deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not

in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due*

*process of law*."  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).  Plaintiff

received notice, a hearing, an opportunity to be heard, and a written decision stating the reasons for

the mail rejection.  He also had the opportunity to seek review of the mail rejection through the

three-step grievance process.  Under these circumstances, Plaintiff has received all of the process to which he was entitled.

2.      Substantive due process

Plaintiff also asserts a violation of his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV.  "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty."  *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002).  "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used."  *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim."  *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)).  If such an amendment exists, the substantive due process claim is properly dismissed.  *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

- 11 -

In the instant case, there exist specific constitutional amendments that apply to all of Plaintiff's claims.  For example, Plaintiff expressly contends that Defendants violated his Eighth Amendment rights through the same conduct.  *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal).  Similarly, the First Amendment provides an explicit textual source of constitutional protection for limitations on Plaintiff's rights to free speech and association.  Thus, the standard applicable to First Amendment claims and not the more generalized notion of substantive due process should be applied.  *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim.").  Likewise, the Fourteenth Amendment Procedural Due Process Clause would apply to protect Plaintiff's property interest in the mail-rejection proceedings.  Finally, the Equal Protection Clause governs claims involving allegations of racial discrimination.  Consequently, Plaintiff's substantive due process claim will be dismissed.

## B.    Equal Protection

Plaintiff alleges that Defendants discriminated against African-American women in their application of the prison prohibition on pictures depicting bare buttocks, because African-American women tend to have larger thighs, hips and buttocks than women of other races. As a result, they are more likely to have more buttocks exposed when wearing the same clothes.

- 12 -

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.  However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948).  "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66.  "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011).

Plaintiff's conclusory allegations fail to support an equal protection violation.  First, he fails entirely to demonstrate standing to challenge the alleged discriminatory treatment of African-American women.  As a layman, Plaintiff may only represent himself with respect to his individual claims; he may not act on behalf of others.  *See Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978).  He does not allege that he was treated differently.  He only alleges that certain women were treated differently.  Plaintiff lacks standing to bring such a discrimination claim.

In addition, even if Plaintiff's allegations are taken to suggest that he, as an African-American man, was subject to a discriminatory application of the prison policy on personal nude pictures, Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence.  *See Davis v.  Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination).  First, Plaintiff alleges no facts constituting direct evidence of discriminatory motive or purpose.  *See Umani v.  Mich.  Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir.  2011) (citing *Johnson v.  Kroger Co.*, 319 F.3d 858, 865 (6th Cir.  2003)); *see also Davis*, 679 F.3d at 440.  Second, Plaintiff fails to allege a *prima facie* claim under the indirect, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  Plaintiff alleges no facts suggesting that a similarly situated white prisoner was allowed to keep substantially identical pictures.  Although Plaintiff claims that pictures of a thinner white woman wearing the same clothes would not expose as much buttocks, he does not allege that any similar pictures of heavy, white women were subjected to a different standard or that

white prisoners were allowed pictures that he was not allowed.  He therefore fails to state an equal protection claim.[4]

## C.        Eighth Amendment

Without detailing his theory, Plaintiff broadly complains that Defendants' conduct violated the Eighth Amendment.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).

Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*,

---

[4]Plaintiff alleges in a conclusory fashion that application of the mail-rejection policy results in racial profiling or ethnic intimidation of African-American women.  Even assuming that Plaintiff has standing to bring such claims, and further assuming that claims exist other than those already addressed  under the Equal Protection Clause, such claims would fail for the same reasons as Plaintiff's equal protection claim:  Plaintiff fails to allege any facts suggesting that the policy was applied in a racially discriminatory fashion.

591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Id.*

Plaintiff's claim that he was deprived of certain photographs that showed the exposed buttocks of his female friend fall far short of the sort of extreme deprivation protected by the Eighth Amendment.  He therefore fails to state an Eighth Amendment Claim.

### D.      First Amendment

Plaintiff alleges that Defendants denied him his rights under the First Amendment by refusing to allow him to receive the pictures in issue.  Under MDOC policy, a prisoner may send and receive uncensored mail from any person or organization unless the mail violates policy or an administrative rule.   MICH. DEP'T OF CORR., Policy Directive 05.03.118, ¶ D (effective Sept. 14, 2009).  Mail cannot be prohibited solely because its content is "religious, philosophical, political, social, sexual, unpopular, or repugnant."  *Id.*  However, mail can be prohibited if it is a "threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with rehabilitation of the prisoner."  *Id.*  Certain types of incoming mail, which are listed in the policy, are deemed to pose these risks under all circumstances.  For example, the list includes acts of sadism, masochism, bondage, bestiality, and sexual acts involving children.  *Id.*, ¶ MM(5).  The policy also prohibits photographs depicting actual or simulated sexual acts by one or more persons.  *Id.*, ¶ MM(14).  In addition, the policy prohibits nude and semi-nude pictures, unless they

- 16 -

are commercially circulated. *Id.*, ¶ MM(113). Plaintiff contends that the MDOC policy prohibiting photographs revealing his friend's buttocks is unconstitutional under the First Amendment.

The Supreme Court considered a challenge to regulations of the Federal Bureau of Prisons regarding receipt of sexually explicit mail in *Thornburgh v. Abbott*, 490 U.S. 401 (1989). The regulations in *Thornburgh* contained a non-exhaustive list of materials that were banned, including "sexually explicit material which by its nature or content poses a threat to security, good order, or discipline of the institution, or facilitates criminal activity." *Id.* at 405 n.5. The policy specifically excluded the following types of sexually explicit material: (1) homosexual (of the same sex as the institution population), (2) sado-masochistic, (3) bestiality, and (4) involving children. *Id.* at 405 n.6.

In evaluating the challenge, the Supreme Court recognized that, because "the judiciary is ill-equipped to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh,* 490 U.S. at 407 (quotation omitted). Further emphasizing this deference, the Supreme Court stated:

> We deal here with incoming publications, material requested by an individual inmate but targeted to a general audience. Once in the prison, material of this kind reasonably may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct. Furthermore, prisoners may observe particular material in the possession of a fellow prisoner, draw inferences about their fellow's beliefs, sexual orientation, or gang affiliations from that material, and cause disorder by acting accordingly. As the Deputy Solicitor General noted at oral argument: "The problem is not . . . in the individual reading the material in most cases. The problem is in the material getting into the prison." In the volatile prison environment, it is essential that prison officials be given broad discretion to prevent such disorder.

*Id.* at 412-13 (citations omitted).

In light of the deference owed to prison officials, the *Thornburgh* Court held that limits on incoming prisoner publications must be analyzed under the standard applied by the Court in *Turner v. Safley*, 482 U.S. 78 (1987), for determining the constitutionality of limits on incoming personal mail for prisoners; that is, whether the regulations are "reasonably related to legitimate penological interests." *Thornburgh*, 490 U.S. at 409 (citing *Turner*, 482 U.S. at 89). The *Turner* Court identified four factors to be considered in reaching this determination: (1) whether there is a valid rational connection between the regulation and the legitimate governmental interest which it allegedly furthers; (2) whether there are alternative means by which the inmate may exercise the right impinged; (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources generally; and (4) the existence or absence of ready alternatives to the regulation in question. *Thornburgh*, 490 U.S. at 414-18 (citing *Turner*, 482 U.S. at 88-91). Applying these factors, the Court found that the regulations were reasonably related to legitimate penological interests and did not violate the First Amendment. *Thornburgh*, 490 U.S. at 413.

In unpublished decisions, the Sixth Circuit has addressed challenges to previous versions of MDOC Policy Directive 05.03.118. *See Ward v. Jones*, No. 02-1924, 2003 WL 1795736, at *1 (6th Cir. Mar. 31, 2003) (analyzing MDOC Policy Directive 05.03.118, ¶ EE(14) (effective Jan. 1, 2001), *amended* ¶ DD(14) (effective Mar. 12, 2001) (prohibiting "photographs depicting actual or simulated sexual acts"). Applying *Turner*, the *Ward* Court concluded that the 2001 policy was reasonably related to the legitimate penological interest of prison security. *See Ward*, 2003 WL 1795736, at *2. The Court further noted that Michigan prisoners may still receive less explicit photographs of an arguably sexual nature. *Id.* In *Rogers v. Martin*, 84 F. App'x 577,

579 (6th Cir. 2003), the Sixth Circuit also upheld a prior version of MDOC Policy Directive 05.03.118, which prohibited the introduction of magazines containing actual or simulated sexual acts:

> [T]he MDOC policy did not violate the First Amendment because: (1) it was rationally related to the goal of a safer prison environment; (2) prisoners had alternative means of acquiring sexually explicit materials such as written descriptions of sex acts and nude photographs that do not depict sexual acts; (3) accommodating the prisoners' right to receive sexually explicit materials in the form of photographs of sexual acts could adversely affect prison guards, other inmates, and the allocation of prison resources by creating a sexually charged atmosphere; and (4) redacting every publication containing photographs that violate the rule is not a ready alternative to disposing of the offending magazines because of the administrative burden of case-by-case redaction. *See Turner v. Safley*, 482 U.S. 78, 90-91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Although Rogers argued to the contrary, the defendants were not required to submit evidence that the banned materials actually caused problems in the past or are likely to cause problems in the future, as long as it is plausible that they believed the policy would further a legitimate objective. *See, e.g., Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999).

*Rogers*, 84 F. App'x at 579

This Court has upheld a prior version of Policy Directive 05.03.118, specifically with respect to the restriction complained of by Plaintiff – the prohibition on nude or partially nude pictures taken with home-type cameras, as opposed to those that have been published for commercial use. *See Hunter v. Koehler*, 618 F. Supp. 13, 16-17 (W.D. Mich. 1984). In *Hunter*, the court recited the MDOC's explanation for the policy:

> The intent of this prohibition is to prevent prisoners from receiving nude photographs of wives or girlfriends, as such photos could cause serious disruption between prisoners if they are seen by someone other than the prisoner to whom they were sent. Thus, only nude photos which have been published for commercial use are allowed. As the photos which were sent to you are not of a commercial nature, you will not be allowed to receive them [].

*Id.* at 16.   The *Hunter* court concluded that the MDOC's explanation articulated a legitimate penological reason for the ban. In reaching its decision, the *Hunter* court relied upon *Trapnell v. Riggsby*, 622 F.2d 290 (7th Cir. 1980), in which the court specifically approved a similar policy, holding that a prison regulation prohibiting inmates from possessing or receiving photographs of nude or seminude women unless the photographs had been published for commercial use was constitutionally valid.   *Hunter*, 618 F. Supp. at 17 (citing *Trapnell*, 622 F. Supp. at 293); *see also Giano v. Senkowski*, 54 F.3d 1050 (2d Cir. 1995) (upholding ban on nude or partially nude photographs of spouses or girlfriends, while allowing commercially produced nude pictures); *Thomas v. Croft*, No. 2:10-cv-74, 2010 WL 4809227, at *3 (E.D. Mich. Nov. 18, 2010) (observing that the Supreme Court has upheld more restrictive policies that the one barring individual nude photographs) (citing *Beard v. Banks*, 548 U.S. 521 (2006)).   As it did in *Hunter*, this Court concludes that the ban on non-commercial photographs showing nudity as defined by the policy is rationally related to a legitimate penological interest in  prison safety and avoiding prisoner altercations.

The second prong of the *Turner* test is whether the prisoners have alternative means of expression.  *See Turner,* 482 U.S. at 92.  The Sixth Circuit has held that prior versions of MDOC Policy Directive 05.03.118 do not preclude written descriptions of sexual acts, *Rogers*, 84 F. App'x at 579, or less explicit photographs of arguably a sexual nature, *Ward*, 64 F. App'x at 424.  Similarly under the current MDOC Policy Directive 05.03.118, Plaintiff may view nude or partially nude pictures that are commercially produced, and he may receive letters or books describing nude women and sexual acts as an alternative means of expression under *Turner,* 482 U.S. at 92.

The third prong of the *Turner* test, whether permitting the photographs would have a significant impact on third parties, also cuts against Plaintiff.  As discussed, the possession by some

inmates of nude or semi-nude photographs of wives and girlfriends can create a source of friction between inmates.  Under such circumstances, permitting prisoners to possess such pictures unquestionably can have a significant impact on other prisoners and, by necessity, on the guards who must mange them if they get into altercations.  *Senkowski*, 54 F.3d at 1056.

The last *Turner* prong requires Plaintiff to prove that there exists alternatives to the regulation in question.  Here, Plaintiff does not identify any ready alternative, and none is apparent to the Court.  Moreover, *Turner* does not require prison officials to adopt the least restrictive alternative to their preferred policy.  *Turner*, 482 U.S. at 90–91.  As the Court has discussed, the prison policy is narrowly directed at its interests; it does not prohibit all erotica.  Under such circumstances, the fourth *Turner* factor weighs against Plaintiff.  *Senkowski*, 54 F.3d at 1056.

In summary, all four *Turner* factors weigh in favor of a finding that MDOC Policy Directive 05.03.118 ¶ MM(13) is reasonably related to the legitimate penological interest of safety and does not violate the First Amendment on its face.  In addition, Plaintiff does not seriously contend that the policy was unconstitutional as applied.  He merely claims that his female friend was not entirely nude in the photographs, but was dressed in very short shorts or a bikini.  And he concedes by implication that, due to the size of the woman, much if not all of her buttocks were exposed.  The policy does not require full nudity, as it defines "nude" photographs "as any photograph exposing the buttocks, pubic area or genitalia, or, except if a baby or infant, the female breast below the top of the areola."  MICH. DEP'T OF CORR., Policy Directive 05.02.118 ¶ MM(14).  As the Court has previously held, the policy does not violate the First Amendment.  Accordingly, the complaint fails to state a First Amendment claim against Defendants either because the policy is invalid on its face or is invalid as applied.

E.      **Retaliation**

Plaintiff contends that Defendants Robinson and Trierweiler retaliated against him for exercising his First Amendment rights by placing him on modified grievance access. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). However, the Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. 2001). Placement on modified access does not deprive a prisoner of the ability to file civil rights actions in federal court. It merely enables prison officials to screen a prisoner's grievances prior to filing to determine whether they are grievable,

non-frivolous, and non-duplicative. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130(II)(PP). Section 1997e(a) of Title 42, United States Code, requires prisoners to exhaust only "such administrative remedies as are available" prior to filing suit in federal court. If a prisoner has been placed on modified access to the grievance procedure and attempts to file a grievance that is deemed to be non-meritorious, he has exhausted his "available" administrative remedies as required by § 1997e(a). *Kennedy*, 20 F. App'x at 471. Consequently, Plaintiff's placement on modified access cannot prevent him from filing claims in federal court.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   June 29, 2016            /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  CHIEF UNITED STATES DISTRICT JUDGE

- 23 -